IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JERRY O. HARDAWAY,

    Petitioner,

  v.

A J SANTOS, Superintendent, Eastern
Oregon Correctional Institution,

    Respondent.

Civil No. 06-1208-AC

FINDINGS AND RECOMMENDATION

  THOMAS J. HESTER
  Assistant Federal Public Defender
  101 SW Main Street
  Suite 1700
  Portland, OR  97204

    Attorney for Petitioner

  HARDY MYERS
  Attorney General
  MARK D. LAY
  Assistant Attorney General
  Department of Justice
  1162 Court Street NE
  Salem, OR  97301

    Attorneys for Respondent

ACOSTA, Magistrate Judge.

1 - FINDINGS AND RECOMMENDATION -

Petitioner, an inmate at the Eastern Oregon Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Petition for Writ of Habeas Corpus should be DENIED, and this action should be DISMISSED.

**BACKGROUND**

On November 13, 2001, and January 8, 2002, a Multnomah County grand jury issued two indictments against Petitioner, charging him with four counts of Burglary in the First Degree, one count of Attempted Burglary in the First Degree, and one count of Theft in the Second Degree. The charges arose from incidents at five separate residences.

In one of the residences, officers recovered DNA evidence from blood from a broken window. In another, officers recovered DNA from a cigarette butt left at the scene. Forensic specialists were later able to match the DNA profiles obtained from the blood and the cigarette butt to Petitioner's DNA profile.

In the incident which led to Petitioner's arrest, the homeowner confronted Petitioner in the house, and spoke to him. Petitioner told the homeowner he was looking for someone who did not live there, and then left. The homeowner positively identified Petitioner in a show-up. Items taken from a fourth residence were found by officers when they searched Petitioner's apartment. The fifth incident involved another apartment in Petitioner's building. The apartment resident reported she heard glass breaking, and saw Petitioner reaching his hand through a window into her apartment.

On May 23, 2002, Petitioner's consolidated cases were called for trial. Petitioner protested that he was not ready, because his lawyer told him about the trial only the night before, after no

contact for two months. Petitioner's trial attorney advised the judge: "I can say I'm not necessarily prepared to proceed and present the defenses that [Petitioner] believes should be presented because we've had some disagreement about issues of trial strategy. But I am prepared to present his defense case today." Respondent's Exhibit (hereafter "Resp. Exh.") 106, p. 2. After further discussion, the trial judge denied Petitioner's request for a continuance.

A jury was impaneled, and after opening statements, the trial judge excused the jury for the noon recess. The judge agreed to clear the courtroom so Petitioner could meet privately with his attorney. When court re-convened, trial counsel advised that after discussing the matter with counsel and the prosecutor, Petitioner had agreed to accept the State's plea offer.

Petitioner pleaded guilty to two counts of Burglary in the First Degree and one count of Attempted Burglary in the First Degree. The trial judge reviewed the plea petitions with Petitioner, noting that each indicated that he was "not satisfied with the help and advice I received by my lawyer." Petitioner confirmed that this statement referred to his complaints about counsel's failure to adequately investigate and prepare for trial.

The trial judge reviewed the contents of the plea petitions and engaged in the following colloquy with Petitioner:

> THE COURT: . . . In light of our previous discussion and the Court -- we have in paragraph four relative to your satisfaction or lack of satisfaction with your attorney, I have to ask you some questions about your decision to enter in to this plea negations [sic] and these pleas. That this is a decision that you are making, and not based on what your lawyer is telling you to do, and telling you to, and assisting that you do anything along those lines. This is, in fact, a decision that you personally are making?
>
> PETITIONER: Yes, it was.
>
> THE COURT: All right. Independent of your feelings about your attorney?

3 - FINDINGS AND RECOMMENDATION -

> PETITIONER: They had the DNA. They had the missing police report. So that was my package there. And that package that I had didn't have nothing – nothing in it to work on. All that's been taken away from me. So I didn't have – against me, (unintelligible) against me. Victor – can't find Victor, don't tell me where he is. The DNA was never (unintelligible), but they came up with one of them missing police reports at the end. That – that was missing a long time ago, back in November. I had told them there's stuff missing out of my packet. And so I was hoping that that – that they would come forth and say what they said to me in my apartment, but none of that came in – came into play at all. And so that would have helped me out.
>
> And so messing with litigation on my side through the reports, like I said. They didn't show up – you know, with a subpoena, so. It would have been better to take the plea bargain than go to trial.

Resp. Exh. 107, pp. 43-44. The trial judge sentenced Petitioner to 92 months of imprisonment.

Petitioner did not file a direct appeal. Petitioner did seek state post-conviction relief ("PCR"). Following an evidentiary hearing, the PCR trial judge denied relief. On appeal, the Oregon Court of Appeals summarily affirmed, and the Oregon Supreme Court denied review. Resp. Exhs. 144, 146.

On August 24, 2006, Petitioner filed his *pro se* Petition for Writ of Habeas Corpus in this Court. In it, Petitioner alleges the following verbatim grounds for relief and supporting facts:

> **Ground One:** Counsel failure to investigate, interview and prepare for trial. Counsel did not interview any of petitioner's court approved witnesses – why? From petitioner's witness list.
> **Supporting Facts:** Counsel made a tactical decisions not to call witnesses, conduct legal research and prepare for trial and sentencing. The duty to investigate is part of petitioner's right to reasonably competent counsel. The investigation should always include efforts to secure information in the possession of the prosecutor and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements. This principle is so fundamental that the failure to conduct a reasonable pre-trial investigation may in itself amount to ineffective - loss of counsel. Post conviction hearing in Umatilla are only 30 minutes 2 motions for addition time at this hearing was denied. Petitioner exhibits were introduced and preserved, in civil court, but not made part of petitioner civil case register.

4 - FINDINGS AND RECOMMENDATION -

**Ground Two:** Counsel failed to secure trial discovery from prosecution failed to timely ask for sanctions against the state.

**Supporting Facts:** Petitioner exhibits will show petitioner notified counsel several months before trial that said police reports were missing, yet she failed to take the appropriate steps to secure them, leaving petitioner's fate to change. The petitioner may not be aware of the significance of facts regarding intent mitigation, suppression of evidence, or impeachment of witnesses that only an independent investigation can uncover. Counsel half-hearted attempt at an limine motion the day of trial to exclude alleged (DNA) evidence prejudiced petitioner case before trial got started. The state claim they did a test on both saliva and blood drop and used all the evidence the defense expert couldn't conduct any evaluation, there was nothing to turn over to the defense. The state expert did match the (DNA) but it wasn't petitioner name. Petitioner himself ask for retest. 12-31-01.

**Ground Three:** [Counsel] [f]ailed to inspect any crime scene. Counsel failed to adequately maintain contact with petitioner created a conflict of interest.

**Supporting Facts:** Petitioner wasn't aware his trial was starting May 23. Counsel gave a mere ten hour notice. Before the court petitioner did express his dissatisfaction with counsel of trial yet the court still accepted petitioner's illegal plea. Counsel failure to spend any time with petitioner discussing what needed the investigated, mitigating factors, and to develop sound trial strategies tactics and overall defense theories for trial. This all became painfully evident and effectively forced petitioner to take a plea agreement that he did not want to take. Counsel was granted a continuance to go over police reports that the defense did not obtain until the day of trial. The court admitted was a discovery violation. Counsel did not review these reports with petitioner, because the court house did not have a contact area? Trial attorney simply told petitioner she saw nothing of any significance!

**Ground Four:** Counsel failed to interview and have witnesses ready for trial. Also attorneys expert witnesses 3#. No defense strategy.

**Supporting Facts:** Counsel was inadequate and ineffective for failing to locate, interview and ensure witnesses were at trial ready to testify. There can be no rational decision to not call and/or subpoena witnesses that had been already approved by the court and have those witnesses ready to testify. Counsel's failure to interview witnesses deprived petitioner of any opportunity of making an informed assessment of the strengths and weaknesses of the government's case. Counsel was inadequate also ineffective for failing to have her expert that was going to testify ready for trial. This cannot be considered within the range of professional conduct. This forced petitioner to take a plea. In opening statements trial counsel did not rebut any of the prosecutor's opening statements, including the false (DNA) evidence. Nor did counsel state what witnesses she was going to call, or what were going to testify to. Counsel had not intention on going to trial. This

5 - FINDINGS AND RECOMMENDATION -

>also force petitioner to take a plea. Trial attorney had a list of 4 (or 5) references, and called them trial witnesses, never talking to any of the four.

Respondent argues all but four of the claims alleged in the Petition for Writ of Habeas Corpus were procedurally defaulted. Respondent further argues that the state PCR court's denial of relief on the four exhausted claims is entitled to deference, and that Petitioner is not entitled to habeas corpus relief in this court.

In his Memorandum in Support of the Petition, counsel for Petitioner does not address Respondent's procedural default argument. Instead, counsel addresses only four claims of ineffective assistance of trial counsel: (1) failure to adequately communicate with Petitioner about the investigation and scheduling of the case; (2) failure to adequately investigate; (3) failure to adequately prepare for trial; and (4) failure to object to false and inadmissible evidence suggesting Petitioner had a specific motive to commit the crimes at issue. Petitioner argues the PCR court's decision is not entitled to deference in this Court because the PCR trial judge relied upon evidence it admitted in violation of Petitioner's Sixth Amendment rights, and because the conclusion that counsel performed adequately was an unreasonable application of clearly established federal law.

## DISCUSSION

I. <u>Deference to PCR Court Decision</u>

    A.    Legal Standards

This Court may grant a writ of habeas corpus only if the state court proceeding: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

the state court proceeding. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) applies to challenges to purely legal questions resolved by the state court, and section 2254(d)(2) applies to purely factual questions resolved by the state court. *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004), *cert. denied,* 546 U.S. 963 (2005). Therefore, the question whether a state court erred in applying the law is a different question from whether it erred in determining the facts. *Rice v. Collins*, 546 U.S. 333 (2006). In conducting its review, the Court "look[s] to the last-reasoned state-court decision." *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003), *cert. denied,* 541 U.S. 1037 (2004).

Section 2254(d)(1) consists of two alternative tests, *i.e.*, the "contrary to" test and the "unreasonable application" test. *Cordova v. Baca*, 346 F.3d 924, 929 (9th Cir. 2003). Under the first test, the state court's "decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir.) (citing *Williams v. Taylor*, 529 U.S. 362, 413-414 (2000)), *cert. denied*, 540 U.S. 968 (2003).

Under the second test, "'[a] state court's decision involves an unreasonable application of federal law if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case.'" *Van Lynn*, 347 F.3d at 738 (quoting *Clark*, 331 F.3d at 1067). Under the "'unreasonable application clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . . . [r]ather that application must be objectively unreasonable.'" *Clark*, 331 F.3d at 1068 (quoting *Lockyer v. Andrade*, 538 U.S. 63 (2003)). When evaluating whether the state decision amounts to

7 - FINDINGS AND RECOMMENDATION -

an unreasonable application of federal law, "[f]ederal courts owe substantial deference to state court interpretations of federal law." *Cordova*, 346 F.3d at 929.

Under section 2254(d)(2), which involves purely factual questions resolved by the state court, "the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record." *Lambert*, 393 F.3d at 978; *see also Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir.) ("a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable"), *cert. denied,* 534 U.S. 1038 (2004). Section 2254(d)(2) "applies most readily to situations where a petitioner challenges the state court's findings based entirely on the state record. Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence, . . . that the process employed by the state court is defective, . . . or that no finding was made by the state court at all." *Taylor*, 366 F.3d at 999 (citations omitted).

In examining the record under section 2254(d)(2), the federal court "must be particularly deferential to our state court colleagues . . . . [M]ere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'" *Lambert*, 393 F.3d at 972 (quoting *Taylor*, 366 F.3d at 1000). Once the federal court is satisfied that the state court's fact-finding process was reasonable, or where the petitioner does not challenge such findings, "the state court's findings are dressed in a presumption of correctness, which then helps steel them against any challenge based

8 - FINDINGS AND RECOMMENDATION -

on extrinsic evidence, *i.e.*, evidence presented for the first time in federal court."[1] *Taylor*, 366 F.2d at 1000.

> B.   The State PCR Court's Decision

The state PCR trial judge did not issue a written opinion. He did, however, explain his denial of relief on the record at the conclusion of the PCR evidentiary hearing:

> THE COURT: . . . Getting down to the -- to the main allegations, first is that they failed to investigated [sic], didn't subpoena witnesses, no discovery, no possible suspects, no key witnesses, no visit to the crime scene, didn't disclose to defendant exculpable evidence. The police report on the day of trial, apparently, was conceived by petitioner as being exculpable, and the problem is that there was an investigator; there was an investigation, and the investigator did go to the crimes of the various scenes.
> 
> He did try to talk to witnesses. He tried to talk to some of the witnesses of the defendant or of the -- excuse me, of the petitioner, that they suggested. One of them is (inaudible) Bannerman (ph), was the man that owned the blue bike. Mr. Bannerman is in parts unknown to the -- to everybody, including, I guess, petitioner, but, unfortunately for the petitioner, the investigation from the witnesses who were to be so helpful to him were not helpful, in fact, they hindered him and were extremely problematical.
> 
> Then we go to the DNA evidence, and, of course, that's not something that can be suppressed; it was admissible. It was properly admitted in the case, and that was extremely overwhelming in several of the situations.
> 
> The fact that he failed to object to the District Attorney's opening remarks, there's nothing wrong, essentially, with the attorney's opening remarks, and there's no basis for any objection.
> 
> Motions to set over the trial and substitute the attorney were denied, then it went pro se, I guess, at that point, but the bottom line was, he still had his attorney

---

[1] Under section 2254(e) "a determination of a factual issue made by a State court shall be presumed to be correct." The "AEDPA spells out what this presumption means: State-court fact-finding may be overturned based on new evidence presented for the first time in federal court only if such new evidence amounts to clear and convincing proof that the state-court finding is in error. . . . Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once" it is found that the state court reasonably determined the facts in light of the evidence presented in the state proceeding. *Taylor*, 366 F.3d at 1000.

9 - FINDINGS AND RECOMMENDATION -

there with him, and she (inaudible) insofar as the entering into a plea agreement whereby he was assured a 92-month sentence.

Now, first off, insofar as investigation and potential witnesses were concerned, she apparently had an expert available on the DNA, but, unfortunately, there was nothing her expert could do with a DNA, either, that made a positive identification of defendant-petitioner.

The allegation is that she failed to advise the effects of the guilty plea, and that it wasn't an intelligent, knowing, and voluntary plea on his behalf because it was only going to be 42 months. I don't believe that, quite frankly. I think the evidence is otherwise.

I believe he made an intelligent, knowing, and voluntary plea at that time under those circumstances and that he know what the sentence was going to be up-front, and that's what the paperwork would indicate.

Subpoena witnesses, I've already talked about that. There were no witnesses that were going to be helpful. You sure as hell don't want to subpoena the bad ones.

Refusal of phone calls, the attorney said that she had numerous contacts with him, and I don't doubt that, and I don't find any basis for chastising her insofar as that's concerned.

Trial preparation bad, I don't find any trial preparation that was bad. And the last complaint is that he never -- she never informed the defendant of consecutive sentence situation, and -- but I just don't find the evidence that bears that out.

I find no basis for post-conviction relief in this case. I find that the attorney was capable and able, did an adequate and reasonable job. I find that the petition for post-conviction is to be denied in all particulars.

Resp. Exh. 138, pp. 22-24.

C.   Analysis

The Supreme Court has established a two-part test to determine whether a defendant has received ineffective assistance of counsel. Under this test, a petitioner must prove that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-888 (1987).

Where a petitioner has pleaded guilty or no contest on the advice of counsel, the "voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). The prejudice prong, in turn, requires the petitioner to show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Id.* at 59; *Lambert v. Blodgett*, 393 F.3d at 980.

The court looks to the factual circumstances surrounding a plea to determine whether the petitioner would reasonably have proceeded to trial. *See Miller v. Champion*, 262 F.3d 1066, 1068 & 1074-75 (10th Cir. 2001) (while a petitioner need not prove that he would have prevailed at trial in order to establish prejudice under *Hill*, the strength of the prosecution's case should be considered as circumstantial evidence of whether petitioner really would have gone to trial had he received adequate advice from counsel), *cert. denied*, 534 U.S. 1140 (2002). As such, "the strength of the prosecution's case is an indicator of whether the defendant would have accepted a guilty plea offer even if counsel's advice had not been constitutionally deficient." *Brown v. Hill*, 2007 WL 464712 *5 (D. Or., Feb. 7, 2007), *aff'd*, 267 Fed.Appx. 630 (9th Cir. 2008), *cert. denied*, 129 S.Ct. 97 (2008).

Here, Petitioner contends he received constitutionally ineffective assistance of counsel because his trial counsel failed to communicate with him, failed to investigate, and failed to adequately prepare for trial.[2] In the PCR proceeding, however, the state provided evidence from

---

[2]Petitioner also contends trial counsel was ineffective for failing to object to false and prejudicial comments made in the prosecutor's opening statement. As noted below, however, that claim was procedurally defaulted because it was not raised on appeal from the PCR trial judge's denial of relief.

11 - FINDINGS AND RECOMMENDATION -

trial counsel as to the investigation and preparation undertaken on Petitioner's behalf. Other than his own testimony, Petitioner did not present any testimony of witness or other exculpatory evidence to support his claim. The PCR trial judge reviewed the evidence and the record and reasonably concluded that Petitioner's guilty plea was knowing, intelligent, and voluntary, and that Petitioner did not receive constitutionally ineffective assistance of counsel. Petitioner presents no evidence in this court refuting the PCR judge's findings. As such, the PCR court's decision denying relief was not contrary to or an unreasonable application of clearly established federal law, and Petitioner is not entitled to habeas corpus relief on the ineffective assistance of counsel claims.[3]

Petitioner's argument that the state PCR court's decision denying relief is not entitled to deference because the PCR judge relied on evidence admitted in violation of Petitioner's Sixth Amendment rights is without merit. As noted above, at the underlying criminal trial, the judge declared a recess and cleared the courtroom so Petitioner and his trial attorney could confer. During that conference, unbeknownst to Petitioner and his attorney, the courtroom's electronic recording system was left on and a portion of their conversation was recorded. The PCR judge admitted a transcript of the recording submitted by the state in support of their claim that Petitioner's guilty plea was intelligent, knowing, and voluntary. Petitioner's PCR trial counsel did not object to admission of the transcript, and the issue was not addressed on appeal from the denial of PCR relief.

---

[3] Because the claims fail on the merits, the court does not address Respondent's assertion that the claims were waived by Petitioner's guilty plea. *See United States v. Johnston*, 199 F.3d 1015, 1019 n.3 (9th Cir. 1999), *cert. denied*, 530 U.S. 1207 (2000) (noting that jurisdictional claims are not waived by guilty plea); *see also Moore v. Czerniak*, 534 F.3d 1128 (9th Cir. 2008) (granting habeas relief on claim of ineffective assistance of counsel for failure to move to suppress confession where petitioner ultimately pleaded guilty).

To the extent Petitioner challenges the state PCR trial judge's ruling on the admissibility of the transcript, that is a matter of application of state evidentiary law, which this court cannot review in a habeas case. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (it is well settled that "federal habeas corpus relief does not lie for errors of state law.") To the extent Petitioner is attempting to state a claim of constitutional violation as a result of the PCR trial judge's acceptance of the transcript into evidence, Petitioner did not present that claim to the state court. No objection was made at the PCR trial to the proffer of the transcript, and the issue was not raised on appeal. As such, any constitutional claim is among those procedurally defaulted, as discussed below.

II.  Procedurally Defaulted Claims

   A.  Legal Standards

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. *Jackson v. Roe*, 425 F.3d 654, 657-58 (9th Cir. 2005); 28 U.S.C. § 2254(b)(1). A state prisoner satisfies the exhaustion requirement by fairly presenting his claim to the appropriate state courts at all appellate states afforded under state law. *Casey v. Moore*, 386 F.3d 896, 915-16 (9th Cir. 2004), *cert. denied*, 545 U.S. 1146 (2005); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

When a state prisoner fails to exhaust his federal claims in state court and the state court would now find the claims barred under applicable state rules, the federal claims are procedurally defaulted. *Casey*, 386 F.3d at 920; *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). "When a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the

13 - FINDINGS AND RECOMMENDATION -

claims will result in a miscarriage of justice." *Noltie v. Peterson*, 9 F.3d 802, 804-05 (9th Cir. 1993); *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

B.  Analysis

In his Formal Petition for Post Conviction Relief, Petitioner alleged due process violations in the trial and sentencing and several claims of ineffective assistance of trial counsel. In his brief to the Oregon Court of Appeals, Petitioner argued he received ineffective assistance of trial counsel as follows:

> Trial counsel in the underlying criminal case rendered constitutionally ineffective assistance under Article I, section 11 of the Oregon Constitution and the Sixth Amendment to the United States Constitution. Petitioner made a number of allegations in his petition, all of which lead to the conclusion that he did not have adequate assistance of counsel in preparation for his criminal trial. Counsel was unprepared to go forward through trial, and gave petitioner advice prior to his entering of his plea that led him to believe his sentence would be 42 months in prison. Instead, he received 92 months. If he had known what he was facing -- in other words, if counsel had effectively advised him -- he would not have accepted a plea, but would have proceeded through with the trial which had already begun. Counsel did not adequately investigate the case, and did not subpoena a single witness that petitioner wished to call. Because counsel was unprepared to go forward, petitioner felt he had no choice but to take a plea bargain. His plea was involuntary in a constitutional sense, and the trial court erred by denying his petition.

Resp. Exh. 140, pp. 2-3.

As noted above, the Oregon Court of Appeals granted the state's Motion for Summary Affirmance. The Petition for Review to the Oregon Supreme Court reiterates this argument:

> [Petitioner] did not have adequate assistance of counsel in preparation for his criminal trial. Counsel was unprepared to go forward through trial, and gave petitioner advice prior to his entering of his plea that led him to believe his sentence would be 42 months in prison. Instead, he received 92 months. If he had known what he was facing -- in other words, if counsel had effectively advised him -- he would not have accepted a plea, but would have proceeded through with the trial which had already begun. Counsel did not adequately investigate the case, and did

14 - FINDINGS AND RECOMMENDATION -

>       not subpoena a single witness that petitioner wished to call.  Because counsel was
>       unprepared to go forward, petitioner felt he had no choice but to take a plea bargain.
>       His plea was involuntary in a constitutional sense, and the trial court erred by
>       denying his petitioner.

Resp. Exh. 145, pp. 3-4.

With the exception of the three claims addressed above, the remainder of the claims alleged in the Petition for Writ of Habeas Corpus were not encompassed in the arguments presented by Petitioner on appeal and petition for review after the PCR trial court denied relief.  As such, Petitioner failed to fairly present the claims to the state court, and they are procedurally defaulted.

Petitioner does not contest Respondent's procedural default argument as to these claims. Because Petitioner presents no evidence of cause or prejudice or a fundamental miscarriage of justice to excuse the procedural default, habeas corpus relief cannot be granted on the remaining claims for relief.  *See Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004), *cert. dismissed*, 545 U.S. 1165 (2005) (petitioner bears the burden of proving he is entitled to habeas relief).

## RECOMMENDATION

For these reasons, the Petition for Writ of Habeas Corpus be DENIED, and a judgment of dismissal should be entered.

## SCHEDULING

The above Findings and Recommendation are referred to a United States District Judge for review.  Objections, if any, are due January 12, 2009.  If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 10 days after service of a copy of the objections. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this  30th   day of December, 2008.

/s/ John V. Acosta

John V. Acosta
United States Magistrate Judge